# FRANK A. MULLEN v. OTTER TAIL POWER COMPANY.[1]

July 16, 1915.

Nos. 19,339—(214).

**Electricity — cutting wires at fire — breach of duty.**

Defendant, under contract with plaintiff, a merchant, supplied electric current to his store. A fire broke out in a restaurant in the rear of the store and separated from it by a solid partition. Defendant severed the wires supplying the store with electric current, and plaintiff, by reason of the darkness was unable to remove his stock and fixtures. In this action to recover the value of such stock and fixtures, which were ultimately destroyed by the fire, it is *held:*

(1) Defendant had the right to sever the wires that supplied electricity to the store, providing it was reasonably necessary to do so in order to save loss or damage to its property, but it had no such right until such act became so reasonably necessary. It owed plaintiff a legal duty not to deprive him of light unless and until protection of its own interests, or safety to the public, made it reasonably necessary to do so. In this case the wires were severed 40 minutes before there was any such necessity, and defendant knew that plaintiff would need light to save his property. The evidence sustains a finding that cutting the wires at this time was a breach of defendant's duty to plaintiff.

(2) The court was justified in finding that the act of defendant in cutting the wires was the proximate cause of plaintiff's loss, unless plaintiff, after discovering that the wires had been cut, could have averted the loss by reasonable diligence.

(3) The evidence does not sustain a finding that plaintiff could not have averted the loss, or at least made it less, by reasonable care and diligence after discovering that the wires had been cut.

Action in the district court for Stevens county to recover $7,800 for defendant's negligence in disconnecting its electric light wires with plaintiff's premises. Glens Falls Insurance Co. and four other insurance companies filed complaints in intervention. The case was tried before Flaherty, J., who made findings and ordered judgment in favor of the several interveners for the respective

[1] Reported in 153 N. W. 746.

amounts named and in favor of plaintiff for $3,800. From an order denying its motion for a new trial, defendant appealed. Reversed.

*N. F. Field* and *Spooner & Spooner,* for appellant.

*James B. Ormond* and *F. W. Murphy,* for respondents.

BUNN, J.

This action was to recover the value of a stock of merchandise and fixtures destroyed by fire, the claim of liability being that defendant, at the time of the fire, negligently cut the service wires that supplied electric light to plaintiff's store, plaintiff, by reason of the darkness, being unable to remove and save his stock and fixtures. The case was by consent tried before the court without a jury. The decision was in favor of plaintiff and the intervening insurance companies, which had paid plaintiff for part of the loss, for the full amount claimed as the value of the property destroyed.

The case is an important one and involves an unusual if not an entirely new state of facts. We have reached the conclusion that there should be a new trial because the evidence, in our opinion, does not show that plaintiff used due care or diligence in attempting to save his property. The other questions are determined to guide the trial court when the case shall be retried. These questions concern the liability of defendant, and may be stated thus: (1) Was defendant guilty of a breach of duty towards plaintiff in cutting the wires when it did? (2) Was such act the proximate cause of plaintiff's loss, conceding that he did all he reasonably could have done to save his property?

The facts which the evidence justified the trial court in finding true, may be summarized as follows: Defendant owned and operated an electric light plant in the city of Morris, furnishing electric current to consumers under contract with them. Plaintiff owned a lot on the corner of Atlantic avenue and Sixth street. The lot fronted on Atlantic avenue, was 25 feet in width on that street, and 140 feet in depth along Sixth street. There was a two-story frame building on this lot, the front 65 feet of which was occupied and used by plaintiff as a clothing and gentlemen's furnishing store.

The rear 30 feet of the building was used as a restaurant, consisting of a dining room and kitchen; the dining room was next to the store and separated from it by a solid double partition without doors or windows. Between the dining room and the kitchen there was a stairway and a door under it, with two partitions except in the place where the door led into the kitchen. This restaurant was not conducted by plaintiff. Defendant furnished electric current to plaintiff under contract made with the former owner of the plant and assumed by defendant upon its purchase thereof. This contract provided, among other things, that "the company shall use all due diligence in providing a regular and uninterrupted supply of current, but in case supply of current shall be interrupted or be defective the company shall not be held liable therefor." The service wires entered plaintiff's store at a point on Sixth street about 20 feet from the rear of the store, and about 9 feet from the floor. They came from a pole on the corner of Atlantic avenue and Sixth street across Sixth street from the front of plaintiff's store. Two other wires carried the current for the restaurant and were strung from a pole standing on the other side of Sixth street nearly opposite to the rear of the plaintiff's store. These wires entered the building in the dining room of the restaurant.

About 2:45 o'clock on the morning of February 20, 1913, fire broke out in the kitchen of the restaurant. It was a cold calm morning. The fire alarm sounded and the volunteer fire department responded, as did plaintiff, four employees of defendant, and numerous citizens. Plaintiff opened the front door of his store, turned the electric light switch, and there was no light. With a number of men to help, plaintiff tried to remove his stock and fixtures. They succeeded in taking out one show case, with some neckwear, and a few shoes, but abandoned further effort because, as plaintiff claims, they were unable to do anything on account of the complete darkness of the store. In spite of the efforts of the firemen, in 40 minutes after plaintiff came on the scene, the fire broke through from the restaurant into the store, and the result was soon the complete destruction of the store and the stock and fixtures in it. The evidence of plaintiff and a number of witnesses is that had the electric light

been burning in the store all the stock and fixtures could have been removed to a place of safety in 20 minutes. Nick Finneman, an electrician in the employ of defendant, was at the scene of the fire soon after the alarm was given. He tried to get into the store to rescue the meter, but found the door locked. He then climbed the pole at the corner of Atlantic avenue and Sixth street and cut the wires that supplied plaintiff's store. This was the reason why plaintiff was unable to turn on the lights when he entered his store. It is this action of Finneman upon which plaintiff bases his claim of liability. There was much testimony bearing upon the necessity of cutting service wires in case of a fire. It was practically all directed to the danger to the plant or to people on the street by the chance of a short circuit being caused by the melting or burning of the fuses in the building, the burning of the insulation around the wires, their falling and coming in contact with each other. There was testimony that such a short circuit might cause serious damage in the plant of defendant, and testimony that this chance was extremely remote. The trial court found that this danger was very remote, and it was practically the unanimous opinion of the experts that the danger to people on the street was almost negligible.

The evidence is practically undisputed that Finneman could have waited 30 or 40 minutes before cutting the wires without any danger of their being affected by the fire. In fact witnesses for the defendant are inclined to admit that Finneman acted before he should have. It is plain that he knew that plaintiff would need lights to remove his stock. He does not seem to have thought of this at the time, though he waited before cutting the wires serving an adjacent store until the owner and volunteers had removed the stock.

1. Was this act of Finneman in cutting the wires serving plaintiff's store with electric current 40 minutes before there was any necessity for so doing, and with knowledge that this might prevent plaintiff from saving his property, a breach of any legal duty that defendant owed plaintiff? The contract between the parties is not important, except for the bearing it has on the question of what the legal duty of defendant was. It is not a breach of contract that plaintiff complains of, but a tort, actionable negligence on the

part of a servant of defendant in the course of the performance of his duties. We are unable to find that the state of facts has ever been presented to any court for its decision as to whether it constitutes actionable negligence. It is admitted that ordinances have been enacted in some cities requiring power companies to cut their electric wires in case of a fire, but there was no such ordinance in the city of Morris. We hold, however, that in case of fire a power company supplying electricity to consumers has the right to cut its wires, in case it is reasonably necessary to do so in order to save loss or damage to its property. But this does not answer the present question. While the company should not be compelled to take nice chances as to the particular moment of time when it is justified in severing the wires supplying current to a burning building, there would certainly be no excuse for such action in a case where it was apparent that there was no danger for hours of the fire reaching a point where the wires would be affected, and where it was apparent that the act might cause loss to the consumer. It cannot be said that defendant owed no legal duty to plaintiff. It could not cut off his supply of current arbitrarily and escape liability for consequent damages. We think it must be held that the legal duty of defendant was not to deprive plaintiff of needed light unless and until the protection of its own interests, or safety to the public, made it reasonably necessary to do so. It would be liable for a breach of this duty that was the proximate cause of damages to plaintiff. And we are unable to hold on the evidence before us that the trial court was not justified in finding that there was this breach of duty, as before pointed out. Finneman cut the wires from 40 to 50 minutes before there was any necessity for doing so, either from the standpoint of protecting the property of defendant or that of protecting people on the street from electrical shocks. That it was an error of judgment defendant concedes. To the knowledge of Finneman the fire was then confined to the restaurant; there was no wind, and it was not making rapid progress toward the store. He knew that plaintiff had a stock of goods that could be saved if he

had light. His act was unnecessary, and the trial court's finding that it was a negligent act must be sustained.

2. Was the negligence of defendant in cutting the wires the proximate cause of plaintiff's loss? We are unable to draw a sound distinction between this case and that of Erickson v. Great Northern Ry. Co. 117 Minn. 348, 135 N. W. 1129, 39 L.R.A.(N.S.) 237, Ann. Cas. 1913D, 763, where it was held that the act of cutting a hose being used to extinguish the fire was the proximate cause of the burning of the hotel, the evidence being sufficient to sustain a finding that the fire would have been extinguished but for the act. In the present case the evidence is uncontradicted that plaintiff's stock and fixtures could and would have been saved had defendant postponed for half an hour the severing of the service wires. It is impossible to distinguish between the two cases. We hold that the evidence sustains the finding of the trial court that the negligent act of cutting the wires was the proximate cause of plaintiff's loss, unless it can be said that plaintiff could have averted the loss by the exercise of reasonable diligence after discovering that the wires had been severed.

3. It was plainly the duty of plaintiff to do all he could to make his loss as small as possible. If he could have removed his stock in the darkness, or if he could have obtained light from other sources in time to have removed it, he should not be allowed to charge defendant for his loss. The efforts of plaintiff to obtain light consisted of appeals to bystanders to get lanterns. Plaintiff seems to have made no search for them himself. The city had been lighted with electricity for many years, and it may be that lanterns, lamps, candles, and other means of illumination were not readily available.

The evidence makes no mention of candles, little of oil lamps. It is not clear how much light there was on the street. The testimony was directed to efforts to procure lanterns. One was brought in answer to an appeal, but proved smoky and was discarded. Two others were found in a hardware store, but there was no oil. There was probably a lantern on the hose cart, but plaintiff, though a member of the fire department, did not know where this hose cart was stationed, though it was in fact but a short distance from the

front of his store. Plaintiff did nothing himself in the way of searching for lanterns or other lights, but just stood around, trusting entirely to his requests of bystanders who had no personal interest in saving his stock. It is not very clear why the smoky lantern could not have been cleaned and made useful, or why oil could not have been procured for those brought from the hardware store. And it is not easy to understand why candles or lamps, or other illumination might not have been procured in time to enable plaintiff and his willing volunteer assistants to remove at least a large portion of the stock and fixtures. If, as they testify, this could all be done in 20 minutes, and if it took the fire 40 minutes to reach the store, there was 20 minutes time which could have been profitably used in serious effort to obtain light. Our conclusion is that the evidence on this branch of the case is so unsatisfactory that a new trial is demanded.

We call attention to the state of the evidence on the question of the value of plaintiff's stock of goods. He testified to the value of his stock as a whole, based upon the cost price as shown by an inventory taken a short time before the fire. This inventory was produced in court, but not put in evidence, nor was there any examination or cross-examination as to the different items of merchandise or their value. Nothing was deducted for shelf-worn stock. We would not grant a new trial for the insufficiency of the evidence on the question of damages, but the evidence on this issue is quite unsatisfactory, and should be made more convincing on another trial.

Order reversed and new trial granted.