La whence Newmabk, J.
Plaintiff has commenced a small claims action for property damage. It is claimed that $400 worth of meat stored in plaintiff’s freezer was ruined because of voltage cutbacks during August, 1973.
The defendant admits these power reductions and offers as a complete defense that section of LILCO’s general rules and regulations which governs limitations of liability (Long Island Lighting Company, General Information, II Rules and Regulations, rule 6, filed with the Public Service Commission, P.S.C. No. 7). CPLR 4540 (subd. [d]) makes a copy of this tariff as filed admissible and prima facie evidence of the original as filed with the P.S.C. That rule provides:
“ 6 — Liability of Company
‘' A. Continuity of Supply:
“ The Company will endeavor at all times to provide a regular and uninterrupted supply of service, but in case the supply of service shall be interrupted or irregular or defective or fail from causes beyond its control or through ordinary negligence of employees, servants or agents, the Company will not be liable therefor.”
Defendant has cited numerous cases that have held this or similar provisions to be valid, as well as cases determining that a utility is not an insurer as is a common carrier. (Hamilton Employment Serv. v. New York Tel. Co., 253 N. Y. 468.) Quite clearly, then, the defendant is not liable for damages caused by some power failure beyond its control or by some ordinary negligence of its agents; nor is it an insurer as to continued steady service.
However, here, admittedly the power reduction was not caused by any element beyond defendant’s control or due to some ordinary negligence, or even any gross negligence. Undoubtedly, the reduction was systematically, voluntarily made in order to meet demands of an actual or expected emergency. If there were reasonable grounds for this action on defendant’s part, no liability can be incurred; if such action was unnecessary or unreasonable under the circumstances, then the utility is liable for damages incurred.
The second paragraph under rule 6 seems to govern this situation: ‘ ‘ The Company may, without liability therefor, interrupt service to any customer or customers in the event of emergency threatening the integrity of its system if, in its sole *913 judgment, such action will prevent or alleviate the emergency condition.”
In Ann. 4 ALR 3d 594, at page 608, a case is discussed (Mullen v. Otter Tail Power Co., 130 Minn. 386) which dealt with this question: “ that an electric company owed a legal duty to a consumer not to shut off the power until it could be found that there was a reasonable necessity to do so in the interest of the public welfare or to protect its own property, and therefore would be liable in damages for commission of a tort, not for breach of contract, where it was found that no reasonable necessity had existed for defendant to turn off the current ”.
Schoeman v. Consolidated Edison Co. of N. Y. (66 Misc 2d 784) was a case where the plaintiff on behalf of himself and others sought an injunction to prevent the utility company from, among other things, reducing voltage in certain areas for lengths of time (this tactic is known as “ load shedding ”) to avoid a potential power crisis. The Supreme Court of Westchester County dismissed the application as improper. The court said the company is under the jurisdiction of the Public Service Commission which was reviewing the emergency plans, and that if the P.S.C. approved such plans the plaintiff’s proper remedy would be an article 78 proceeding to review the P.S.C.’s determination in light of the “ reasonableness ” standard of subdivision 1 of section 65 of the Public Service Law. That statute requires electric corporations to provide service which is “ safe and adequate and in all respects just and reasonable.”
A duty is imposed on the defendant corporation by virtue of that statute (Public Service Law, § 65, subd. 1). Plaintiff has shown and defendant admits a breach of that duty, and plaintiff has suffered injury for which he seeks damages.
In the absence of any showing by the defendant that an emergency situation actually existed or even that a reasonable determination was made to avert a crisis, no defense is presented which bars judgment being granted to the plaintiff.
Judgment is granted to the plaintiff in the sum of $400.